904 So.2d 1157 (2004)
Arthur Gene KEEN and Joyce I. Keen, Appellants
v.
SIMPSON COUNTY, Mississippi, Simpson County Sheriff'S Department and J.C. Dillon, Sheriff of Simpson County, Mississippi, Appellees.
No. 2003-CA-00339-COA.
Court of Appeals of Mississippi.
November 2, 2004.
*1158 Tonya Michelle Blair, Philip W. Gaines, Jackson, Dewitt L. Fortenberry, Mendenhall, for Appellants.
Jack R. Dodson, Clarksdale, for Appellees.
Before KING, C.J., LEE, P.J., and GRIFFIS, J.
KING, C.J., for the Court.
¶ 1. Arthur and Joyce Keen filed complaints alleging false arrest, malicious prosecution, infliction of emotional distress, and abuse of process against Simpson County, Mississippi, the Simpson County Sheriff's Department, and J.C. Dillon, Sheriff of Simpson County in the Simpson County Circuit Court. The Keens filed a motion for summary judgment on the issue of false arrest and a motion for partial summary judgment on the issue of malicious prosecution. The trial judge denied the Keens' summary judgment motions, but granted summary judgment to the defendants. Aggrieved, the Keens raise the following issues on appeal:
I. Whether the trial court erred in overruling the summary judgment motions as to defendants' liability for false arrest and for malicious prosecution.
II. Whether the trial court erred in granting defendants' motion for summary judgment.

FACTS
¶ 2. On or about May 8, 2000, Willie Mae Brister was murdered in Simpson County. During the investigation, Simpson County Sheriff J.C. Dillon (now deceased), obtained the names of Arthur and Joyce Keen as possible suspects. According to Dillon, he received an anonymous tip that a Clinton Butler had been paid to kill Mrs. Brister. After being picked up and advised of his Miranda rights, Butler gave a videotaped statement, which implicated the Keens in Brister's murder. According to Butler's statement, Arthur and Joyce Keen were present during the murder, wearing gloves, and searched through papers belonging to Brister.
¶ 3. Based upon this evidence, Sheriff Dillon requested that Justice Court Judge Ted Blakeney issue an arrest warrant for the Keens. To obtain this warrant, Sheriff Dillon presented Judge Blakeney with a criminal affidavit, which stated the following:
On Monday, May 8, 2000, Willie Mae Brister was found hanging in a shed behind her residence located on Highway 541 in Simpson County, Mississippi. There was an apparent attempt to make Mrs. Brister's death appear to be suicide. An examination by a pathologist found Mrs. Brister's death to be a homicide.
Sheriff J.C. Dillon received a tip from an anonymous source that a Clinton Butler had bragged to several people that he and Mrs. Brister's grandson killed Mrs. Brister. According to them, he stated that "I killed the old [lady] for money."
Jimmy Gray was questioned and he stated that Clinton Butler told him that he *1159 and Mrs. Brister's grandson killed Mrs. Brister for money.
That Clinton Butler was picked up for questioning, and after being fully advised of this [sic] rights and waiving his rights, gave a video taped confession that he, Ricky Burrow, Gene Keen and Joyce Keen were all present at Willie Mae Brister's residence when Mrs. Brister was killed. Mr. Butler indicates that Gene Keen and Joyce Keen wore gloves, and possibly that Ricky Burrow wore gloves. Butler states that Joyce Keen and Gene Keen were going through papers of Mrs. Brister's before, during and/or after the killing of Mrs. Brister.
According to other family members, Mrs. Brister's wedding band in [sic] missing as well as a filing cabinet, and other financial records.
On August 7, 2001, the warrant was authorized by Judge Blakeney, and the Keens were arrested and charged with capital murder.
¶ 4. On August 8, 2001, both of the Keens filed a petition for writ of habeas corpus declaring that they were being illegally detained and no bond had been set. On August 14, 2001, a preliminary hearing was held before Justice Court Judge Eugene Knight. Judge Knight determined that probable cause existed to believe that the Keens had committed the crime charged, and bound them over to the grand jury.
¶ 5. A habeas hearing was held on August 21, 2001, before Circuit Court Judge Robert Evans. At that hearing, the Keens' attorney argued that Sheriff Dillon had previously given sworn testimony that indicated that the sheriff's investigation showed that one witness (not Arthur and/or Joyce Keen) was actually paid in connection with the murder of Brister. After hearing the evidence, Judge Evans determined that (1) the facts attached to the affidavit signed by Sheriff Dillon did not support the charge of capital murder, (2) no probable cause existed to issue the warrants, (3) the warrants should be set aside, and (4) the Keens had been wrongfully detained. Judge Evans entered an order discharging the Keens from the custody of the Simpson County Sheriff's Department.
¶ 6. On January 31, 2002, Arthur and Joyce Keen, invoking the Mississippi Tort Claims Act, filed a complaint against Simpson County, Mississippi, the Simpson County Sheriff's Department, and J.C. Dillon, Sheriff of Simpson County in the Simpson County Circuit Court for false arrest, malicious prosecution, and abuse of process.
¶ 7. On August 27, 2002, the defendants filed a motion to recuse Judge Evans pursuant to Canon 3(E)(1)(d)(iv) of the Code of Judicial Conduct. The defendants' motion was granted on the same day.
¶ 8. On September 19, 2002, the Keens filed a motion for summary judgment as to the defendants' liability for false arrest and partial summary judgment as to liability for malicious prosecution.
¶ 9. The defendants filed a motion for summary judgment on October 28, 2002, indicating that there were no genuine issues of material fact and that Dillon signed an affidavit which presented the facts in good faith.
¶ 10. On October 31, 2002, the affidavit of Bennie Crumpton, a former investigator for the Office of the District Attorney of the Thirteenth Judicial District, was filed. Crumpton's affidavit stated that he was present in the District Attorney's office in Simpson County on more than one occasion when Sheriff Dillon discussed the murder of Mrs. Brister and "made statements that he had to make an arrest and put somebody in jail; ... that he needed *1160 to make an arrest because an election is coming up." The affidavit also stated that Crumpton was present when Assistant District Attorney Richard W. Webb stated to Dillon that "there was not sufficient evidence to make an arrest."
¶ 11. On January 14, 2003, Circuit Court Judge Vernon Cotten entered an order denying the Keens' motions for summary judgment. In the same order, the judge sustained the defendants' motion for summary judgment.

ISSUES AND ANALYSIS
¶ 12. Because issues I and II are interrelated, we have addressed them together.

I. & II.

Whether the trial court erred in overruling the Keens' summary judgment motions.
¶ 13. The Keens contend that the trial court erred in denying their motions for summary judgment as to the defendants' liability for false arrest and for malicious prosecution. They claim that the elements of false arrest and malicious prosecution had been established at the civil habeas corpus proceeding and that the facts established at the proceeding should have been binding on the same parties in the civil suit. The Keens maintain that the doctrines of res judicata and/or collateral estoppel should have entitled them to partial summary judgment on these issues. The Keens claim that because the order from the habeas corpus proceeding was not appealed to the supreme court, res judicata and/or collateral estoppel apply to those findings.
¶ 14. When reviewing the grant or denial of a motion for summary judgment, this Court conducts a de novo review. Benson v. National Union Fire Ins. Co. of Pittsburgh, P.A., 762 So.2d 795(¶ 5) (Miss.Ct.App.2000). "The burden of demonstrating that there is no genuine issue of material fact falls on the party requesting the summary judgment." Miller v. Meeks, 762 So.2d 302(¶ 3) (Miss. 2000). The court must review all evidentiary matters before it which include: admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. Id. This evidence must be viewed "in the light most favorable to the party against whom the motion for summary judgment is made." Id.
¶ 15. The trial court denied the Keens' summary judgment motions, holding that (1) Sheriff Dillon acted with probable cause, (2) Simpson County was entitled to sovereign immunity, (3) the first two findings were dispositive of the claims of false arrest, malicious prosecution, infliction of emotional distress, and abuse of process, and (4) the grant of the defendants' motion made moot the Keens' summary judgment motions. The trial judge also indicated that in this instance, collateral estoppel did not operate as a bar to further criminal proceedings. The trial judge held that the Keens could not prevail under res judicata because the subject matter of the civil action was not identical, nor was the quality or character of the persons for and against whom the claims were made identical. Miller v. Miller, 838 So.2d 295(¶ 5) (Miss.Ct.App.2002).
¶ 16. Based on a review of the record, this Court finds that res judicata does not apply. Therefore, we will look to whether probable cause existed at the time the warrant was issued.
¶ 17. Uniform Rule of Procedure for Justice Court 3.03 states that "[a]rrest warrants or search warrants shall be issued only by the judge after a judicial determination that probable cause exists *1161 based upon the affidavit or other evidence before the court." In determining whether probable cause exists, the judge/magistrate must "make a practical, commonsense decision based on all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information." Conerly v. State, 760 So.2d 737(¶ 7) (Miss.2000).
¶ 18. The record reflects that approximately 14 months after Brister's death, Dillon received a tip from an anonymous source, who indicated that someone named Clinton Butler had bragged about participating in killing Brister for money. Butler was picked up for questioning. Prior to being questioned, Butler was advised of his Miranda rights, and then gave a videotaped statement.
¶ 19. In his statement, Butler indicated that the Keens were present during Brister's murder. Butler stated that the Keens searched through Brister's papers during the period this murder was taking place. Based upon Butler's statement, Sheriff Dillon believed that the Keens had acted in concert with Butler as part of a larger plan to kill and rob Brister. Sheriff Dillon requested and received from the justice court an arrest warrant for the Keens. However, Butler subsequently recanted his statement. As a result, at the preliminary hearing, Sheriff Dillon, testifying under oath, stated that he had no evidence to connect the Keens to Brister's murder.
¶ 20. The question of probable cause must be determined on the facts as known when the arrest warrant is requested, not on facts that may be subsequently developed. Ellis v. State, 573 So.2d 724, 726 (Miss.1990). Those facts were that Butler had confessed to the killing of Brister, and indicated that the Keens were present in what appeared to be part of a larger plan to kill and rob Brister. While this information may not have been sufficient for purposes of a conviction, it was, and the court so found, sufficient to request an arrest warrant.
¶ 21. Where probable cause exists for an arrest, a suit for false arrest and malicious prosecution will not lie against a law enforcement officer. Malley v. Briggs, 475 U.S. 335, 344-45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); Van v. Grand Casinos of Mississippi, Inc., 767 So.2d 1014(¶ 14) (Miss.2000). This is true even when the defendant is subsequently tried and found "not guilty." Page v. Wiggins, 595 So.2d 1291, 1294 (Miss.1992). In the Keens' case, they did not undergo a trial on the merits of the charge, because the State's case fell apart when Butler recanted his confession and implication of the Keens. Instead, the circuit court considered the evidence on the Keens' request for habeas corpus, and found the evidence to be lacking.
¶ 22. Simpson County correctly asserts that the Keens' remedy must be by way of the Mississippi Tort Claims Act, codified at Mississippi Code Annotated Sections 11-46-1 to -23 (Rev.2002). This Act provides that it shall be "the exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a suit." Pickens v. Donaldson, 748 So.2d 684(¶ 12) (Miss.1999). The Act provides in Section 11-46-9(1)(c) (Rev. 2002), an exemption from liability for law enforcement activities, unless "the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." The trial judge correctly found that Sheriff Dillon's conduct was consistent with the exemption of 11-46-9(1)(c). Accordingly, the grant of summary judgment to the defendants was likewise appropriate.
*1162 ¶ 23. This Court finds the issues to be without merit.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF SIMPSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED AGAINST THE APPELLANTS.
BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, BARNES AND ISHEE, JJ., CONCUR.
GRIFFIS, J., NOT PARTICIPATING.